UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

CIVIL ACTION NO. 2:19-00095 (WOB-CJS)

ESTATE OF VINCENT
J. GIBSON, by and
through JOHNNIE SHADD,
as Administratrix,

PLAINTIFF,

VS.            MEMORANDUM OPINION AND ORDER

DAIMLER NORTH AMERICA
CORPORATION, et al.,

DEFENDANTS.

Before the Court is Lufkin Industries, LLC's Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. 61). The issues are fully briefed and the Court now issues this Memorandum Opinion and Order.

*Factual and Procedural Background*

A. Factual History

In June 2018, Vincent Gibson and David Kennedy, employees of a Lowe's store in Maysville, Kentucky, were on a delivery run in Ohio. (Doc. 124 at 3). They were driving a tractor manufactured by Daimler Truck North America and were hauling a trailer manufactured by Lufkin Industries, LLC. The tractor and trailer were owned by Lowe's. (Doc. 61 at 2). Kennedy was driving and Gibson was in the passenger seat. (Doc. 124 at 3).

A pickup truck pulled out in front of and collided with the tractor-trailer, causing the tractor-trailer to roll over. (*Id.* at

4). The roof of the tractor cab and the bulkhead of the trailer allegedly failed, crushing Gibson's head and killing him. (*Id.*).

Lufkin is incorporated and headquartered in Texas. (Doc. 18 ¶ 4). Other than attending the 2006 Mid-America Trucking Show in Louisville, and registering with the Kentucky Secretary of State, it has never had any presence in Kentucky. (Doc. 124-21; Doc. 124-22). Lufkin's trailer division closed in 2008. (Doc. 61-2 ¶ 3).

Order receipts show that Lufkin sold its trailers to a Georgia-based distributor, Northstar, who then sold the trailers to various Lowe's stores around the country. (Doc. 124-6; Doc. 124-7; Doc. 124-8; Doc. 124-9). At least seven of the trailers that Lufkin sold to Northstar were designated for Kentucky locations. The subject trailer was not one of those seven. It was originally located in Upland, California, but eventually ended up at the Lowe's store in Maysville, Kentucky. (Doc. 124-24).

**B. Procedural History**

On June 27, 2019, Gibson's mother and personal representative brought a products liability action in Mason County Circuit Court. (Doc. 1-1). Daimler removed. (Doc. 1). Lufkin requested more time to file its responsive pleadings, and Plaintiff agreed. (Doc. 124 at 4). Lufkin answered on August 22, 2019, and referenced a personal jurisdiction defense. (Doc. 18 at 21). The parties met via telephonic conference and filed their Rule 26(f) Planning Meeting report on September 19, 2019. (Doc. 27). During the

September 25, 2019, docket call, Lufkin told the Court that it was still investigating a potential personal jurisdiction defense. (Doc. 101 at 3-4).

While the parties briefed choice of law issues, Plaintiff and Lufkin scheduled and attended three expert inspections of the tractor and trailer involved in the accident. (Doc. 124 at 5). Following the second of those three inspections, Lufkin's counsel sent a letter to Plaintiff's counsel requesting that Lufkin be dismissed from the case. (Doc. 124-3). The letter argued that the inspection showed the trailer could not have contributed to Gibson's injuries and death; it did not mention any potential personal jurisdiction defense. (*Id.*).

In June 2020, the Court denied the other defendants' Motions for Summary Judgment and set a deadline for the parties to complete discovery. (Doc. 44; Doc. 45). All parties served initial disclosures. (Doc. 124 at 6). Lufkin's initial disclosures did not mention a potential personal jurisdiction defense and instead disclosed information related to the merits of the case. (*Id.*). The parties also conferred over a stipulated confidentiality order. (Doc. 58). Lufkin never requested that the order reference a potential personal jurisdiction defense. (Doc. 124 at 6). Plaintiff later requested that Lufkin supplement its initial disclosures. (Doc. 65-1). Lufkin agreed to do so but again did not mention any potential personal jurisdiction defense. (*Id.*).

3

Plaintiff served discovery on Lufkin on January 27, 2021. (Doc. 124 at 6-7). Lufkin's counsel emailed back the same day and said for the first time since its Answer that it did not believe the Court had personal jurisdiction over it. (Doc. 65-1). Lufkin's counsel attached to the email a draft Motion to Dismiss for Lack of Personal Jurisdiction. (*Id.*). The email also stated: "Although we could ask the magistrate judge to stay discovery, the more direct approach is to file Lufkin's motion to dismiss. That's why we researched the law, obtained the necessary documents, and wrote the argument—plus, I wanted to put all our cards on the table." (*Id.*). Lufkin's counsel closed the email with an offer to discuss settlement. (*Id.*).

In early February, Plaintiff's counsel emailed Lufkin's counsel and suggested that settlement discussions, rather than litigating jurisdiction, would be a better use of everyone's time. (*Id.*). Accordingly, Plaintiff's counsel suggested that Lufkin "hold off on filing any motion to dismiss until the end of the month." (*Id.*). On February 17, 2021, Plaintiff furnished Lufkin with a settlement demand. (*Id.*). Lufkin responded on March 2, 2021, arguing that Plaintiff's liability theory was not credible and, therefore, Lufkin had no choice but to move for dismissal for lack of personal jurisdiction. (*Id.*). Lufkin moved to dismiss and to stay discovery on March 5, 2021. (Doc. 61; Doc. 62).

On March 29, 2021, the Court entered an agreed order granting Plaintiff additional time to respond to Lufkin's Motion to Dismiss, in order to allow Plaintiff to conduct additional discovery on the personal jurisdiction issue. (Doc. 68). The parties submitted a proposed agreed order setting June 1, 2021, as Plaintiff's deadline to complete jurisdictional discovery and respond to Lufkin's Motion to Dismiss. (Doc. 69). That proposed order also stayed discovery on the merits pending resolution of the Motion to Dismiss. (*Id.*).

This was followed by a series of time extensions and a Motion to Compel Discovery filed by Plaintiff. (Doc. 83; Doc. 85; Doc. 92; Doc. 93). On March 31, 2022, the Court granted Plaintiff's Motion to Compel and stayed Lufkin's Motion to Dismiss pending a joint status report. (Doc. 119). Another extension followed, and the ultimate deadline to complete jurisdictional discovery was set for June 20, 2022. (Doc. 122). Plaintiff filed her Response to Lufkin's Motion to Dismiss on September 2, 2022. (Doc. 124). Lufkin filed its Reply on September 30, 2022. (Doc. 128).

### *Analysis*

**A. Lufkin did not waive its personal jurisdiction defense.**

Plaintiff first argues that Lufkin waived its personal jurisdiction defense by waiting too long to move for dismissal on that basis. Even where a defendant preserves a lack of personal jurisdiction defense, that defense may be waived by the defendant's

conduct during the litigation. *King v. Taylor*, 694 F.3d 650, 658 (6th Cir. 2012) (citing *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 60 (2d Cir. 1999)). Waiting too long to raise the defense by motion can forfeit the defense.[1] *Id.* In the Sixth Circuit, the test for waiving a personal jurisdiction defense is whether the defendant's conduct gives the "[P]laintiff a reasonable expectation that [Defendants] will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking." *Gerber v. Riordan*, 649 F.3d 514, 519 (6th Cir. 2011) (quoting *Mobile Anesthesiologists Chi. v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010)) (internal quotation marks omitted).

Making that determination "is more [an] art than a science . . . and there is no bright line rule." *Boulger v. Woods*, 917 F.3d 471, 477 (6th Cir. 2019) (quoting *State Auto Ins. Co. v. Thomas Landscaping & Constr., Inc.*, No. 2:09-cv-735, 2011 WL 3475376, at *6 (S.D. Ohio Aug. 9, 2011)) (internal quotation marks omitted). "The Sixth Circuit has sent mixed signals in recent cases on what constitutes forfeiture of a Rule 12 defense like personal

---

[1] Courts use both "waiver" and "forfeit" to describe a defendant's loss of the personal jurisdiction defense through conduct. *See, e.g.*, *King*, 694 F.3d at 658 n.3. This Court called that distinction a "red herring." *See Doe v. Griffin*, No. 2:19-00126 (WOB-CJS), 2020 WL 3441530, at *1 (E.D. Ky. June 23, 2020). Therefore, the Court will use the terms interchangeably. *See id.* ("In *King*, the Court used those terms interchangeably, as have more recent decisions.").

jurisdiction." *Schall v. Suzuki Motor of Am., Inc.*, No. 4:14-cv-00074-JHM, 2017 U.S. Dist. LEXIS 72523, at *5 (W.D. Ky. May 11, 2017).

On one hand, *Gerber* took a narrow approach and concluded that the court should consider only a defendant's "submissions, appearances and filings[.]" *Gerber*, 649 F.3d at 519. On the other hand, *King* took a broader approach and concluded that the court should "consider all of the relevant circumstances." *King*, 694 F.3d at 659.

The trend is toward the *King* approach. *See, e.g.*, *Boulger*, 917 F.3d at 477 (citing *id.*) ("Ultimately, we must consider all of the relevant circumstances in determining whether waiver by conduct has occurred."); *Blessing v. Chandrasekhar*, 988 F.3d 889, 899 (6th Cir. 2021) (quoting *King*, 694 F.3d at 659) (district court should consider all relevant circumstances when deciding whether defendant waived personal jurisdiction). Accordingly, the Court will consider all of Lufkin's conduct when deciding whether Lufkin waived its personal jurisdiction defense.

Lufkin's conduct included: waiting eighteen months after filing its Answer to file its Motion to Dismiss, (Doc. 18; Doc. 61); participating in a Rule 26(f) planning meeting and filing a subsequent report with the Court, (Doc. 27); hiring an expert and inspecting the subject trailer, (Doc. 65-1 at 2 ¶ 3); sending a letter to Plaintiff's counsel requesting a dismissal on the merits,

7

(Doc. 124-3); providing initial disclosures, (Doc. 92-1 at 51); supplementing those initial disclosures, (Doc. 65-1 at 8); negotiating a protective order, (Doc. 128 at 5); and suggesting the parties discuss settlement and requesting a settlement demand. (Doc. 65-1 at 18).

This conduct did not waive Lufkin's personal jurisdiction defense. The delay between Lufkin's Answer and its Motion to Dismiss was mostly due to the Court having to resolve a choice of law issue (Doc. 30-1). It was also due to Lufkin's efforts to collect information regarding personal jurisdiction. (Doc. 128 at 8). Lufkin could not move for dismissal for lack of personal jurisdiction without first determining whether personal jurisdiction might exist, and that took time.

The Rule 26(f) planning meeting and initial disclosures were standard preliminary matters required by the Rules of Civil Procedure. *See, e.g.*, Fed. R. Civ. P. 26(a), (f) (Parties "must" provide initial disclosures; parties "must" confer to plan discovery). *See also Betco Corp., Ltd. v. Peacock*, No. 3:12-cv-1045, 2014 WL 809211, at *4 (N.D. Ohio Feb. 28, 2014) (quoting 2 Moore's Federal Practice, § 12.31[3] (3d ed. 2012)) (Personal jurisdiction not waived "by litigating preliminary matters without pressing the defense unless doing so gives the plaintiff a reasonable expectation that the defendant intends to defend on the

merits, or causes the court to expend some effort that would be wasted if personal jurisdiction is later found to be lacking.").

Nor can Lufkin be faulted for inspecting the subject trailer. Lowe's, not Lufkin, owned the trailer, and Plaintiff was paying for it to be kept in storage. (Doc. 124-2 at 5–7). Lufkin had no control over whether the trailer might be moved or altered, so it chose to inspect the trailer early on rather than risk losing evidence. Lufkin should not have to choose between preserving its personal jurisdiction defense and inspecting an important piece of evidence. Plus, one inspection was conducted at least in part to discover the trailer's origins, which would help determine whether personal jurisdiction existed. (Doc. 61-2 ¶ 5). Exploring whether a defense might apply does not waive that defense.

And that same logic applies to the protective order that Lufkin helped negotiate. Lufkin needed documents from Lowe's to determine whether the Court had personal jurisdiction. But Lowe's suggested that it would not produce those documents without a protective order. (Doc. 97-3). So Lufkin helped negotiate the order so it could access the documents and hopefully determine whether personal jurisdiction existed. Plaintiff cannot argue that Lufkin waived personal jurisdiction by trying to determine whether personal jurisdiction existed.

Plaintiff also points to Lufkin's letter requesting the case be dismissed on the merits, and to Lufkin's suggestion that the

parties discuss settlement, as evidence that Lufkin actively participated in the case and therefore waived personal jurisdiction. (Doc. 124 at 6–7, 13). But these discussions were informal and between counsel only. (Doc. 124-3; Doc. 65-1 at 14–19). They did not "cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking." *Gerber*, 649 F.3d at 519.

Lastly, Lufkin referenced its personal jurisdiction defense throughout the litigation. Personal jurisdiction was referenced in Lufkin's Answer. (Doc. 18 at 21). It was referenced at the September 2019 docket call. (Doc. 101 at 3–4). It was referenced in Lufkin's June 2020 Notice of Intent to Serve Subpoena. (Doc. 97-1). It was referenced in a January 2021 email from Lufkin's counsel to Plaintiff's counsel; that email also included a draft Motion to Dismiss for Lack of Personal Jurisdiction, so Plaintiff knew Lufkin's position on the matter. (Doc. 65-1 at 13–14). Thus, Plaintiff cannot argue that she had "a reasonable expectation that [Lufkin] will defend the suit on the merits." *Gerber*, 649 F.3d at 519.

**B. The Court does not have personal jurisdiction over Lufkin.**

In diversity cases, federal district courts apply the forum state's law to determine whether personal jurisdiction exists. *Est. of Pressma v. ITM TwentyFirst Servs., LLC*, No. 3:21-cv-34-RGJ, 2022 WL 4110317, at *3 (W.D. Ky. Sept. 8, 2022) (citing *Lanier*

*v. Am. Bd. of Endodontics*, 843 F.2d 901, 909 (6th Cir. 1988)). Personal jurisdiction in Kentucky is a two-step analysis. *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011). First, the Court determines whether the defendant's conduct fits any of the enumerated categories in Kentucky's long-arm statute and, if so, whether the plaintiff's claim "arises from" that conduct. *Id.* Second, the Court determines whether personal jurisdiction comports with federal due process. *Id.*

## 1. Lufkin's conduct does not fall into or arise from any of the Kentucky long-arm statute categories.

Kentucky's long-arm statute lists nine categories of conduct that can form the basis for personal jurisdiction. Ky. Rev. Stat. § 454.210(2)(a). Here, the parties focus on three: transacting business, contracting to supply services or goods, and causing tortious injury. *Id.* §§ (1)–(4).

### a. Lufkin did not transact business in Kentucky.

For the first category, since the Kentucky Supreme Court's *Caesars* decision, there has been "little [state] case law interpreting the meaning of 'transacting business' as used in" Kentucky's long-arm statute. *Hall v. Rag-O-Rama, LLC*, 359 F. Supp. 3d 499, 505 (E.D. Ky. 2019) (quoting *Gentry v. Mead*, No. 16-100-DLB-CJS, 2016 WL 6871252, at *3 (E.D. Ky. Nov. 21, 2016)) (internal quotation marks omitted).

To fill the gap, federal district courts in Kentucky have taken different approaches to interpreting the language. *Est. of Pressma*, 2022 WL 4110317, at *5. The first approach is using the plain meaning of "transacting business" as defined in Black's Law Dictionary. *See, e.g., Childress Cattle, LLC v. Cain*, No. 3:17-cv-388-JHM, 2017 WL 3446182, at *3 (W.D. Ky. Aug. 10, 2017) (quoting *Aces High Coal Sales, Inc. v. Cmty. Tr. & Bank of W. Georgia*, No. CV 15-161-DLB-HAI, 2017 WL 3122661, at *14 (E.D. Ky. July 21, 2017)).

The second approach is asking whether there has been "a course of direct, affirmative actions within a forum that result in or solicit a business transaction." *Gentry v. Mead*, No. 16-100-DLB-CJS, 2016 WL 6871252, at *3 (E.D. Ky. Nov. 21, 2016) (quoting *Mod. Holdings, LLC v. Corning, Inc.*, No. 13-CV-405, 2015 WL 1481443, at *6 (E.D. Ky. Mar. 31, 2015)) (internal quotation marks omitted).

And the third approach is to adopt the Sixth Circuit opinion *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 504-05 (6th Cir. 2014), quoting the Michigan Supreme Court's interpretation of that state's long-arm statute, which uses the same "transacting any business" language as Kentucky's long-arm statute. *See, e.g., Eat More Wings, LLC v. Home Mkt. Foods, Inc.*, 282 F. Supp. 3d 965, 969 (E.D. Ky. 2017).

Of the three approaches, the second is best. Personal jurisdiction in a diversity case requires the Court to apply the

law of the forum state, and this approach is the only one of the three that does so. The other two approaches turn elsewhere for a definition of transacting business: Black's Law Dictionary in one, the Michigan Supreme Court in the other.

Adopting the second approach, the question becomes whether there was "a course of direct, affirmative actions within a forum that result in or solicit a business transaction." *Mod. Holdings*, 2015 WL 1481443, at *6. To answer that question, Kentucky state courts look at a few things: where the defendant's customers came from, where the defendant's revenue came from, whether the defendant solicited business in Kentucky, and whether the defendant's actions were isolated or numerous. *Id.* (collecting cases).

Applying that approach here, Lufkin did not transact business in Kentucky. Lufkin's customer was a third-party distributor, Northstar, who was based in Georgia, not Kentucky. (Doc. 124-14 at 3; Doc. 61-3 at 3-5). Lufkin derived its revenues from Northstar, not from any customers in Kentucky. (Doc. 61-3 at 4). Sometimes Lufkin would send trailers directly to Lowe's stores, but always at the behest of Northstar, not Lowe's. (*Id.* at 5). Lowe's was Northstar's customer, not Lufkin's. (*Id.* at 1-2, 7-9).

Lufkin never advertised the subject trailer in Kentucky. (Doc. 128-2 at 54). Its advertising was limited to distributor brochures, its website, and ads in industry publications. (*Id.* at

70). Lufkin attended the Mid-America Trucking Show in Kentucky, but the show was a nationwide industry event that did not target any particular state. (*Id.* at 73–74).

And while Lufkin's contracts to provide trailers were numerous, not isolated, those contracts were with Northstar, not with a Kentucky-based company. *See, e.g.*, *Mod. Holdings*, 2015 WL 1481443, at *6 (one isolated contract insufficient for personal jurisdiction, but numerous contracts with *Kentucky-based* franchisor sufficient). Further, Lufkin was registered with the Kentucky Secretary of State, but that alone does not create a prima facie showing of jurisdiction; it must be coupled with one of the enumerated categories in the long-arm statute. *Stuart v. Lowe's Home Centers, LLC*, No. 4:17-CV-00077, 2017 WL 4875281, at *2 (W.D. Ky. Oct. 27, 2017). Lufkin also lacked all the hallmarks of a business presence in Kentucky: no offices or facilities, no PO boxes, no phone numbers, no employees, no advertising, no presence whatsoever.

Finally, even if Lufkin did transact business in Kentucky, Plaintiff's claims do not "arise from" that business. In *Caesars*, the Kentucky Supreme Court explained that, "in order for the long-arm statute to apply, the plaintiff's claim must have 'aris[en] from' the conduct and activities of the defendant described in the applicable statutory provision." 336 S.W.3d at 58. The court interpreted "arisen from" to mean that the plaintiff's "cause of

14

action must have originated from, or came into being," as a result of the defendant's business in Kentucky. *Id.* There must be a "reasonable and direct nexus" between the defendant's conduct and the long-arm statute category. *Id.* at 59.

Here, Plaintiff argues that all of Lufkin's trailers, including the subject trailer, were of the same design. (Doc. 124 at 18). And because any one of those trailers could be the one that ended up at the Maysville, Kentucky, store, the accident here arose from Lufkin's general business of selling trailers. (Doc. 124 at 18-19). But the *Caesars* Court rejected this "but for" theory of causation: "Appellee alleges that her claim 'arose from' Appellants' activities in the state because, *but for* those activities attracting her to patronize the casino boat, she would not have been [injured]. However, . . . we believe this view of the terminology stretches the phrase 'arising from' beyond reasonable bounds." 336 S.W.3d at 58.

So too here. The argument that "but for" Lufkin's general business of selling trailers nationwide, the subject trailer would not be in Kentucky and the accident would not have happened, stretches the "arising from" language too far. Lufkin's order receipts show that it sold 177 trailers to Northstar, at least seven of which were sent to locations in Kentucky. (Doc. 124-6; Doc. 124-7; Doc. 124-8; Doc. 124-9). But the subject trailer was not one of those seven. (Doc. 61-3). The subject trailer was at

the Lowe's store in Maysville, Kentucky, because Lowe's moved it there from Upland, California. So even if Lufkin had no business in Kentucky and had never sold a single trailer there, *this* trailer would still have been at *this* store. Thus, there is no "reasonable and direct nexus" between Lufkin's trailer business and this accident. *Caesars*, 336 S.W.3d at 59. The accident did not "come into being" as a result of Lufkin trailers being sold in Kentucky. *Id.* at 58.

Therefore, Lufkin did not transact business in Kentucky and, even if it did, the accident did not "arise from" that business.

### b. Lufkin did not contract to supply services or goods in Kentucky.

The second long-arm statute category the parties focus on is "[c]ontracting to supply services or goods in" Kentucky. Ky. Rev. Stat. § 454.210(2)(a)(2). To satisfy this category, the contract need not have been executed in Kentucky. *H.E.B., LLC v. Jackson Walker, L.L.P.*, 587 S.W.3d 333, 342 (Ky. Ct. App. 2019) (citing *Hinners v. Robey*, 336 S.W.3d 891, 896 (Ky. 2011)). What matters is whether the contract provides for "services or goods to be transported into, consumed or used in Kentucky." *Id.* (quoting *Hinners*, 336 S.W.3d at 896) (internal quotation marks omitted).

Here, Lufkin sold trailers to Northstar knowing that those trailers were bound for Lowe's stores in Kentucky. (Doc. 124-6; Doc. 124-7; Doc. 124-8; Doc. 124-9). Thus, the Lufkin/Northstar

16

contracts were for goods to be transported into and used in Kentucky. So it would seem that this long-arm statute category is satisfied.

But there is a wrinkle: Northstar was acting as a distributor, an intermediary between Lufkin and the Lowe's stores in Kentucky. And Kentucky courts have held that an intermediary breaks the chain between the supplier and the end customer, thereby placing the supplier outside the scope of the long-arm statute. *See, e.g., Lycom Commc'ns, Inc. v. Don and Mary Rice, Inc.*, No. 2018-CA-000148-MR, 2019 WL 2246606, at *3 (Ky. Ct. App. May 24, 2019) ("It is undisputed that Ritel Systems sold its software to Mega Hertz, and Mega Hertz then sold the software to Lycom. Thus, Mega Hertz, not Ritel Systems, contracted to sell services and/or goods to Lycom in Kentucky[.]").

That is the case here. "[Lufkin] sold its [trailers] to [Northstar], and [Northstar] then sold the [trailers] to [Lowe's]. Thus, [Northstar], not [Lufkin], contracted to sell services and/or goods to [Lowe's] in Kentucky[.]" *Id.*

Further, even if Lukin did contract to supply trailers in Kentucky, for the reasons discussed above, the accident did not "arise from" those contracts. Therefore, Lufkin did not contract to supply services or goods in Kentucky.

### c. Lufkin did not cause tortious injury in Kentucky.

The third long-arm statute category the parties focus on is "[c]ausing tortious injury" in Kentucky. Ky. Rev. Stat. § 454.210(2)(a)(3)-(4). There are actually two separate categories here, and each party focuses on a different one.

Plaintiff focuses on subsection three, which allows personal jurisdiction over claims arising from the defendant's "[c]ausing tortious injury by an act or omission in this Commonwealth[.]" Lufkin focuses on subsection four, which allows personal jurisdiction over claims arising from the defendant's "[c]ausing tortious injury in this Commonwealth by an act or omission outside this Commonwealth" if the defendant does business in or derives revenue from Kentucky, provided that the claim arises from that business or revenue. In other words, subsection three asks whether the *act* causing the injury occurred in Kentucky; subsection four asks whether the *injury* occurred in Kentucky.

Plaintiff's Complaint states that Lufkin "conducted business within the Commonwealth of Kentucky, generated revenue as a result, placed its product in the stream of commerce, and caused tortious injury in the Commonwealth of Kentucky." (Doc. 1-1 at 4). Conducting business in Kentucky would implicate subsection three. And causing injury in Kentucky would implicate subsection four. Therefore, both subsections will be addressed.

Plaintiff argues that subsection three of the long-arm statute—"[c]ausing tortious injury by an act or omission in this

Commonwealth"—applies because Lufkin sold trailers that it knew would end up at stores in Kentucky. (Doc. 124 at 19–20). But this long-arm statute category requires the defendant to do or not do something "in this Commonwealth[.]" The acts at issue here are designing, manufacturing, and selling allegedly defective trailers. Lufkin did none of those things in Kentucky. The trailer was designed and built in Texas, and sold to Northstar in Georgia. (Doc. 61-3).

Alternatively, subsection four involves a defendant "[c]ausing tortious injury in this Commonwealth by an act or omission outside this Commonwealth . . ." Ky. Rev. Stat. § 454.210(2)(a)(4). This subsection fixes the problem of the previous subsection by allowing the challenged acts to have occurred outside Kentucky. But this subsection also imposes a new requirement: that the resulting injury have occurred in Kentucky. And that new requirement is not met here, because the accident and injury occurred in Ohio.

In sum, under subsections three and four of the Kentucky long-arm statute, something must have happened in Kentucky. It could be the defendant's acts or omissions, or it could be the decedent's injuries, but it must be at least one of the two. Here, neither happened in Kentucky, so neither one can provide the basis for jurisdiction under the Kentucky long-arm statute.

**2. Exercising personal jurisdiction over Lufkin would violate federal due process.**

There are two types of personal jurisdiction under the federal due process analysis: general and specific. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (citing *Goodyear Dunlap Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

General jurisdiction governs all claims against a defendant, regardless of whether the claim relates to the state exercising jurisdiction or to the defendant's activities there. *Id.* A state may exercise general jurisdiction over a defendant when the defendant is "at home" in that state. *Id.* A corporation is "at home" in the state where it is incorporated and where it has its principal place of business. *Id.*

Here, Lufkin is incorporated in and has its principal place of business in Texas. (Doc. 18 ¶ 4). So Kentucky cannot exercise general jurisdiction over Lufkin.

Specific jurisdiction allows a state to exercise jurisdiction over a defendant even if the defendant is not "at home" there. *Ford*, 141 S. Ct. at 1024. It has two parts.

First, the defendant must have sufficient contacts with the state. This is satisfied if the defendant purposefully availed itself of the privilege to do business in the state. *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The Sixth Circuit

20

has adopted the "stream of commerce plus" theory of purposeful availment. *Parker v. Winwood*, 938 F.3d 833, 840 (6th Cir. 2019) (citing *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 479–80 (6th Cir. 2003)). Under that theory, a defendant purposefully avails itself of the state's privileges only if it does something more than placing its product into the stream of commerce. *Id.* (citing *Bridgeport*, 327 F.3d at 479). "Something more" could be designing the product for the forum state's market, advertising in the state, providing regular advice to customers in the state, or marketing through a distributor in the state. *Asahi Metal Idus. Co., Ltd. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 112 (1987).

That requirement is not met here. The only thing Lufkin did was place its trailers into the stream of commerce. It did not design the trailers specifically for a Kentucky market, did not advertise in Kentucky, did not advise customers in Kentucky, and did not market or make sales through a distributor in Kentucky. Thus, Lufkin did not purposefully avail itself of the state's privileges.

The second part of specific jurisdiction is that the claim "must arise out of or relate to" the defendant's contacts with the state. *Ford*, 141 S. Ct. at 1025 (quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773, 1780 (2017)) (internal quotation marks omitted). This can be established by

21

showing "[an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (quoting *Bristol-Myers*, 137 S. Ct. at 1780) (internal quotation marks omitted).

Here, Plaintiff's claim did not "arise out of" Lufkin's contacts with Kentucky because, other than placing its trailers into the national stream of commerce, Lufkin had no contacts with Kentucky. Plaintiff instead relies on the *Ford* Court's conclusion that the other part of the standard—the "relates to" part—can support personal jurisdiction without causation. (Doc. 124 at 20). But the facts in *Ford* were different.

In *Ford*, the plaintiffs brought product liability suits involving Ford cars in their home states of Montana and Minnesota. *Ford*, 141 S. Ct. at 1023. The cars were not designed, manufactured, or purchased in those states, but Ford did substantial business there—advertising, selling, and servicing other Ford vehicles. *Id.* Ford argued that because the cars were not designed, manufactured, or bought in Montana or Minnesota, those states lacked personal jurisdiction over Ford. *Id.* The Supreme Court disagreed. It held that because Ford did so much business in Montana and Minnesota— using "every means imaginable" to sell its products and services there—the plaintiffs' claims "related to" Ford's contacts with those states, even though the subject cars were designed,

manufactured, sold, and involved in accidents in other states. *Id.*
at 1026.

In contrast, Lufkin had no presence in Kentucky other than a
handful of trailers that were purchased and later re-sold by
another company. Lufkin did not advertise, service, or sell its
trailers in Kentucky. Whereas Ford used "every means imaginable"
to do business in Montana and Minnesota, Lufkin did no business in
Kentucky. The accident here could not "relate to" Lufkin's other
business in Kentucky because Lufkin had no other business in
Kentucky. Thus, Plaintiff's claim does not "arise from or relate
to" Lufkin's contacts with Kentucky.

Therefore, because neither prong of specific jurisdiction is
met, exercising personal jurisdiction over Lufkin would violate
federal due process.

Therefore, for the reasons stated above, **IT IS ORDERED** that:

1. Lufkin's Motion to Dismiss be, and is hereby, **GRANTED.**
This 3rd day of November 2022.



**Signed By:**

**_William O. Bertelsman_**

**United States District Judge**